DICK MAY AND CHRIS MAY, APPELLANTS, *v.* G.M.B., INC., RESPONDENT.

No. 18184

July 26, 1989                                         778 P.2d 424

*D. G. Menchetti* and *Bradley P. Elley,* Incline Village, for Appellants:

*Folsom and Clark,* Reno, for Respondent.

---

[3]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

## OPINION

*Per Curiam:*

### THE FACTS

On December 31, 1979, appellants Dick May and Chris May (the Mays) entered into a contract with D&D Masonry, Inc. (D&D), whereby the Mays agreed to sell 250 shares of D&D stock to D&D in return for $100,000.00. Pursuant to the contract, D&D gave the Mays a promissory note for $100,000.00 secured by a "floating lien" on D&D's equipment.

In March, 1980, the Mays filed with the Secretaries of State of Nevada and California Uniform Commercial Code (UCC) Financing Statements that were signed by D&D's principals and that indicated, among other things, the Mays' security interest in D&D's Peterbilt tractor and Fruehauf trailer. The Mays, however, did not cause the vehicles' titles to be surrendered to the Departments of Motor Vehicles of Nevada and California, the states that issued the vehicles' titles respectively, to have the security interests noted thereon.

D&D made payments pursuant to the terms of its contract with the Mays until September, 1982, at which time it defaulted leaving a balance of $42,100.53. At approximately the same time, D&D, doing business as Sierra Masonry & Fireplace Distributors, became delinquent in its account with respondent Glass Mountain Block, Inc. (GMB). In time, GMB agreed to accept D&D's Peterbilt tractor and Fruehauf trailer in satisfaction of D&D's overdue $33,000.00 account. Prior to the vehicles being

transferred, however, Nick Holt, then a salesman for GMB and now GMB's general manager, learned of the Mays' security interest.[1] GMB acquired the Peterbilt tractor on September 14, 1983, and the Fruehauf trailer on October 3, 1983. At the time of the transfers, neither vehicle's title indicated any outstanding liens or encumbrances.

Approximately one year later, the Mays brought suit against Douglas A. Baker, Debra J. Baker, D&D, and Does I through XV. The complaint alleged that the named defendants unlawfully sold, transferred or conveyed some or all of the personal property listed on the UCC Financing Statements without the Mays' authorization, knowledge, or consent, and that the Doe defendants I through XV unlawfully received possession of and converted the property. GMB was named as Doe defendant VI by an amendment filed on December 7, 1984.[2]

GMB subsequently moved for summary judgment arguing that the Mays had no claim against it because they failed to perfect their security interest in the manner required by Nevada and California law. The Mays opposed GMB's motion and filed a cross-motion for partial summary judgment on their conversion claim. After concluding that the Mays had not complied with NRS 482.428 and their "security agreement" was therefore void, the district court granted summary judgment in GMB's favor.[3] This appeal followed.

---

[1]Holt stated in his deposition:

A [HOLT]: I was dealing with both sides at that time so I was hearing it from Sierra Masonry. I was also hearing it from Dick [May]. But regarding Dick, he told me that he had a chattel mortgage or some kind of a hold on the equipment over there because he had loaned them some money.

Q [MR. MENCHETTI]: Were you aware that Dick had sold his interest in this business to the Bakers?

A: I wasn't aware of that particularly, no. The only information I had is that Dick had loaned the Bakers some money.

Q: And you mentioned something about a chattel mortgage?

A: I use that word, I don't think Dick ever used that word. He told me that the equipment over there was put up as collateral for the money that he had loaned them.

Q: And that was prior to the acquisition of the truck and trailer by Glass Mountain Block?

A: Yes.

[2]Pursuant to a stipulation by the parties, the district court, on September 28, 1987, dismissed with prejudice the actions against Douglas and Debra Baker and D&D.

[3]In its entirety, the district court's order provided:

Defendants Bakers owned a Peterbilt truck and Fruehauf trailer which were securing a $100,000 note to plaintiffs. Apparently defend-

## DISCUSSION

1. The Mays contend that the district court erred in declaring that their security agreement with D&D was void. In the Mays' view, failing to perfect their security interest in the vehicles would, at most, cause their interest to be subordinated to those persons entitled to priority under UCC Article 9, NRS 104.9101 *et seq.* We agree.

The statute on which the district court premised its conclusion that the Mays' security agreement was void, NRS 482.428, requires certain secured parties to surrender the title to a pledged vehicle to the Department of Motor Vehicles so that the security interest may be noted thereon.[4] NRS 482.428 provides:

> 1. Whenever a security interest is created in a motor vehicle, other than a security interest required to be entered pursuant to NRS 482.423, 482.424 or 482.425, the certificate of ownership shall be delivered to the department with a statement signed by the debtor showing the date of the security agreement, the name of the debtor and the name and address of the secured party.
> 2. The department shall issue and deliver to the secured party a certificate of ownership with the name and address of the secured party noted thereon.

We perceive nothing in NRS 482.428 which supports the district court's conclusion that the Mays' failure to comply with that statute rendered their "security agreement" with D&D void.

---

> ants Bakers owed some money to defendant Glass Mountain Block and transferred the truck and trailer to satisfy this obligation. I am of the opinion that the plaintiffs possessed an imperfect *security agreement* because they didn't comply with NRS 482.428. The *security agreement* is *void* because the certificate of ownership wasn't properly surrendered and labeled.
>
> It seems to me that the law requires more than an awareness of collateral to defeat the bonafide [sic] purchaser's status and a security agreement is not effective. Accordingly, the fact that an agent and defendant may have been aware of some collateral does not defeat Glass Mountain Block's status as a bonafide [sic] purchaser. I believe that the Fruehauf trailer is covered by the provisions of NRS 482.428. Summary judgment should be granted in favor of Glass Mountain Block.

(Emphasis added.)

[4]Our review of relevant statutes and case law convinces us that our conclusion would be the same under either Nevada or California law. Accordingly, and without expressing any view on whether California law applies to the transactions involving the Fruehauf trailer, we refer solely to Nevada law in this opinion.

Indeed, the parties below did not even argue the validity of the Mays' security agreement. Rather, as noted above, GMB argued that because the Mays failed to "perfect" their "security interest" in the vehicles the security interest was invalid.

A "security agreement" is "an agreement which creates or provides for a security interest." NRS 104.9105(1)(1). A "security interest," in turn, is "an interest in personal property or fixtures which secures payment or performance of an obligation. . . ." NRS 104.1201(36). Under the UCC as enacted in Nevada, a security interest does not "attach," i.e., become enforceable against a debtor or third parties with respect to the collateral, "until there is (1) an agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral." McCorquodale v. Holiday, Inc., 90 Nev. 67, 69, 518 P.2d 1097, 1098 (1974) (citations omitted); NRS 104.9203. "Perfection" of a security interest is to be distinguished from its attachment. See NRS 104.9303.[5] See also J. White & R. Summers, Handbook of Law Under the Uniform Commercial Code § 23-1 (2nd ed. 1980) [hereinafter White & Summers] ("The drafters distinguished attachment of a security interest from its perfection. It is perfection (filing of a financing statement, taking possession of the collateral, as appropriate, etc.) that affords maximum secured creditor protection against third parties. . . .").

Perfection of a security interest in a motor vehicle is addressed in NRS 482.432, which provides:

> Compliance with the applicable provisions of NRS 482.423 to 482.431, inclusive, is sufficient for the *perfection* and release of a security interest in a vehicle and for exemption from the requirement of filing of a financing statement under the provisions of paragraph (b) of subsection 3 of NRS 104.9302. *In all other respects the rights and duties of the debtor and secured party are governed by the Uniform Commercial Code—Secured Transactions and chapter 97 of NRS to the extent applicable.*

(Emphasis added.) Subsection 3 of NRS 104.9302 compliments and expands on NRS 482.432. In pertinent part, NRS 104.9302(3) provides:

---

[5]NRS 104.9303(1) provides:

1. A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in NRS 104.9302, 104.9304, 104.9305 and 104.9306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

3.  The filing of a financing statement otherwise required by this article *is not necessary or effective to perfect* a security interest in property subject to:

    . . . .

    (b) The following statutes of this state: NRS 482.423 to 482.432 . . .; or
    (c) A certificate of title statute of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection (subsection 2 of NRS 104.9103).

(Emphasis added.)

GMB contends that because the provisions of NRS 482.428, *supra,* are mandatory, any claimed security interest in a motor vehicle must be perfected through the Department of Motor Vehicles and evidence of the perfected interest must appear on the certificate of title. In support of its argument, GMB cites Godfrey v. Gilsdorf, 86 Nev. 714, 718, 476 P.2d 3, 6 (1970), for the proposition that ''[t]he licensing and registration provisions of the vehicle code are essentially police regulations and strict compliance with them appears to be the prevailing view.'' GMB also argues that NRS Chapter 482 governs the parties' rights and liabilities, and that UCC Article 9 as enacted in Nevada does not apply in this case.

First, while we neither disagree with GMB's argument as it relates to the method of *perfecting* security interests in vehicles nor with the above quoted language from *Godfrey,* nothing in NRS 482.428, or in any other statute or case GMB cites, suggests that the failure to *perfect* security interest which has *attached* renders the security agreement, or the security interest, *void. See* First Westside Nat'l Bank of Gr. Falls v. Liera, 580 P.2d 100 (Mont. 1978) (security interest in vehicle unperfected where bank did not record its lien). The district court's declaring the Mays' ''security agreement'' void because they failed to perfect their security interest was error. Even if we assume that the district court meant that the Mays' ''security interest'' was void because they failed to perfect it, this too was error. *See id.* Nothing, except perhaps good business practice and good sense, requires a secured creditor to perfect his security interest.

Second, within the same paragraph as the above quoted language from *Godfrey* we stated: ''As we see it, the relevant provisions of the two codes [NRS Chapter 482 and the UCC] can exist side by side with meaning given to each and without doing violence to either, and we should so construe them.'' *Godfrey,* 86

Nev. at 718, 476 P.2d at 6. The plain language of NRS 482.432, *supra,* provides that compliance with its provisions is sufficient for the perfection of a security interest in a vehicle, but that in all other respects UCC Article 9 controls. We believe that here, as in *Godfrey,* it is possible to give effect to both NRS Chapter 482 and UCC Article 9 without depriving either of its intended meaning. Accordingly, we reject GMB's contention that the rights and liabilities of the parties here are governed solely by NRS Chapter 482.

UCC Article 9's so called "golden rule," White & Summers § 25-12, is found in NRS 104.9201, which, in pertinent part, provides:

> Except as otherwise provided in this chapter a security agreement is effective according to its terms between the parties, against *purchasers* of the collateral and against creditors. . . .

(Emphasis added.) A "purchaser" is defined as a person who takes by purchase. NRS 104.1201(32). "'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property." NRS 104.1201(31).

Viewing the evidence in the record in the light most favorable to the Mays, Tschabold v. Orlando, 103 Nev. 224, 225, 737 P.2d 506, 507 (1987), we note that while not perfected, the Mays' security interest in the vehicles had attached. *See* NRS 104.9203 (attachment occurs when debtor has signed a security agreement which contains a description of the collateral, value has been given, and debtor has rights in the collateral). Thus, unless GMB falls within any of the exceptions to NRS 104.9201 set forth in Article 9, the Mays' security agreement with D&D would be effective against it. NRS 104.9201, *supra.*

Generally, "[a] buyer in ordinary course of business (subsection 9 of NRS 104.1201) . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." NRS 104.9307(1). GMB does not contend that it was a buyer in ordinary course of business;[6] however, GMB suggests that it was

---

[6]The rule set forth in NRS 104.9307(1) undermines GMB's argument that if the Mays prevail individuals will not be able to rely on an "untainted certificate of ownership" when purchasing motor vehicles. Just as NRS 104.9307(1) protects "buyer[s] in ordinary course of business," NRS 104.9301(1)(c), *infra,* gives priority to "buyer[s] not in ordinary course of business" who give value and lack knowledge of a security interest. These two categories will account for most motor vehicle transfers. Under NRS 104.9201, *supra,* "purchasers," *see* NRS 104.1201(31)–(32), *supra,* enjoy

a buyer *not* in the ordinary course of business. Therefore, in GMB's view, if UCC Article 9 applies to the transaction, it is entitled to prevail pursuant to NRS 104.9301(1)(c).[7] We disagree.

We believe Nick Holt's deposition testimony, viewed in the light most favorable to the Mays, established GMB's knowledge of the Mays' security interest.[8] A buyer not in the ordinary course of business is entitled to priority over an unperfected security interest only "to the extent that he gives value and receives delivery of the collateral *without knowledge of the security interest* and before it is perfected." NRS 104.9301(1)(c) (emphasis added). Therefore, contrary to its argument GMB was not entitled to the priority as a buyer not in the ordinary course of business, and, thus, it was not entitled to summary judgment under NRS 104.9301(1)(c).

2. The Mays also contend that the district court erred in

---

less protection, and, therefore, must be more circumspect in their acquisition of property. In fairness to secured creditors, we perceive no good reason why the rule should be otherwise.

[7]NRS 104.9301(1)(c) provides:

> 1. Except as otherwise provided in subsection 2, an unperfected security interest is subordinate to the rights of:
>
> . . . .
>
> (c) In the case of goods, . . . a person who is not a secured party and who is a . . . buyer not in ordinary course of business, . . . to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.

The vehicles GMB acquired from D&D were "equipment," a subcategory of "goods." *See* NRS 104.9109(2).

[8]GMB contends that whether it had "knowledge" of the Mays' security interest, thus placing it outside the provisions of NRS 104.9302(1)(c), remains an issue. In so contending, GMB highlights the inappropriateness of the district court's grant of summary judgment. In deciding a summary judgment motion the trial court must, as we do here, accept as true all evidence favorable to the opposing party. Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963). *See generally* Note, The Movant's Burden In A Motion For Summary Judgment, 1987 Utah L. Rev. 731, 735 ("'[A]llegations in the nonmoving party's pleadings, when supported by affidavits or other evidentiary material, are to be regarded as true.") (footnote omitted). Here, the district court viewed Nick Holt's deposition testimony as establishing only an "awareness of collateral," not actual knowledge, by GMB. The UCC, however, imputes an agent's knowledge to his principal if communication is part of the agent's regular duties or if the agent has reason to know that his information will materially affect the transaction. *See* NRS 104.1201(17). Accordingly, the district court should have found that GMB had knowledge of the Mays' security interest in the vehicles.

denying their motion for partial summary judgment on their conversion claim. During oral argument, counsel for GMB averred that appellant Dick May knew of D&D's transfer of the vehicles to GMB, and that the Mays subsequently failed to exercise diligence in pursuing their remedies. The transcript of Nick Holt's deposition, now viewed in the light most favorable to GMB, suggests that Dick May knew, at least after the fact, of the vehicles' transfer. At oral argument, counsel for the Mays acknowledged, and we believe correctly so, that Dick May's knowledge raised factual issues with respect to the Mays' conversion claim and that summary judgment therefore would not have been appropriate. Accordingly, we conclude that the district court did not err in denying the Mays' partial summary judgment motion. The effect, if any, of Dick May's purported knowledge of the transfer, or the Mays' diligence or lack thereof in pursuing their remedies, should be determined on remand.

## CONCLUSION

Based on the foregoing, we conclude that the district court erred in granting summary judgment in GMB's favor, but that it did not err in denying the Mays' motion for partial summary judgment. We therefore reverse that portion of the district court's order that granted summary judgment in favor of GMB, affirm the district court's denial of the Mays' partial summary judgment motion, and remand the matter for trial on the merits.