**Wayne M. TURNER, Plaintiff,**

**v.**

**The UNITED STATES of America, acting through the U.S. Department of Agriculture, Farmers Home Administration, an Agency of the United States of America, Defendant.**

No. CV–S–93–744–PMP (LRL).

United States District Court,
D. Nevada.

Feb. 2, 1995.

Thomas Rondeau, Wilbur M. Roadhouse, Goold, Patterson, DeVore & Rondeau, Las Vegas, NV, for plaintiff.

Carlos A. Gonzalez, Asst. U.S. Atty., Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

Before the Court is Plaintiff Wayne M. Turner's Renewed Motion for Summary Judgment (# 20), filed November 9, 1994. The Defendant the United States (the "Government") filed its Opposition to Plaintiff's Renewed Motion for Summary Judgment (# 24) on November 23, 1994. Plaintiff filed a Reply (# 25) on December 6, 1994.

Also before the Court is the Defendant United States' Motion for Summary Judgment (# 22), filed November 10, 1994. Plaintiff Wayne M. Turner ("Turner") filed his Opposition to Defendant United States' Motion for Summary Judgment (# 23) on November 23, 1994. The United States filed a Reply (# 27) on December 12, 1994.

## I. Background

This is an action for declaratory relief and to quiet title to certain real property [1] located in Lincoln County, Nevada (the "Farm") on

---

1. The real property to which this action relates is described as follows:

The South Half (S ½) of the Southwest Quarter (SW ¼), and the Northwest Quarter (NW ¼) of the Southwest Quarter (SW ¼), of Section 13; the Northeast Quarter (NE ¼), and the East Half (E ½) of the Southeast Quarter (SE ¼), and the North Half (N½) of the Northwest Quarter (NW ¼), all in Section 14; the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section 23; and the Northwest Quarter (NW ¼) of Section 24; Township 2 South, Range 67 East, M.D.B. & M., Lincoln County, Nevada.

which the Defendant claims a lien pursuant to a loan obtained from the Farmer's Home Administration.

Plaintiff Wayne M. Turner owns the Farm in Lincoln County, Nevada, on which he resides. Under the provisions of the Consolidated Farm and Rural Development Act ("RDA"), as amended, 7 U.S.C. §§ 1921 to 1936, the Secretary of Agriculture is authorized to grant certain loans to farmers and ranchers. See 7 U.S.C. § 1922 (1994). The Secretary grants these loans through the United States Department of Agriculture, Farmers' Home Administration ("FmHA").

On August 6, 1979, the FmHA granted a Farmers' Home Loan ("FmHA loan") to Plaintiff and his now deceased wife, Janice Turner, for development of Plaintiff's Farm and to refinance certain other loans. Plaintiff signed a note in favor of the Farmers' Home Administration. As security, Plaintiff and Janice Turner, as Trustors, gave a Deed of Trust on the Farm to FmHA as beneficiary. This Deed of Trust ("FmHA Trust Deed") was recorded on August 7, 1979, in Lincoln County, Nevada.

In connection with the FmHA loan, Plaintiff assigned to FmHA monthly payments which Plaintiff was entitled to receive on a promissory note made by Hobo Joe's, Las Vegas, NV, in favor of Plaintiff ("Hobo Joe Note"). Pursuant to the FmHA loan, the FmHA deferred regular payment under the FmHA note for 1979 to 1980. FmHA received limited payments on the FmHA loan from payments on the Hobo Joe Note from August 1979 to December 1980.

FmHA took the position that the assignment of the monthly payments on the Hobo Joe Note was not limited to that period but that FmHA was entitled to Hobo Joe Note monthly payments after December 1980, as well. Because of the conflicting claims of Plaintiff and FmHA, periodic payments from the Hobo Joe Note were placed in an escrow account.

In June 1984, Plaintiff filed a Complaint in the United States District Court, District of Nevada, against FmHA. See Turner v. United States of America, CV-S-84-362-HDM (LRL). In June 1989, Plaintiff filed a Complaint in Clark County District Court. That case was removed to the United States District Court. See Turner v. United States of America, CV-S-89-575-HDM (LRL). In these cases, Plaintiff sought the release of the funds held in escrow.

In 1987, the obligor on the Hobo Joe Note paid in full the outstanding principal balance of the Hobo Joe Note, approximately $165,000.00. This sum was also placed in the escrow account. In April 1987, Plaintiff filed a claim in the United States Claims Court seeking the release of all escrow funds, including the amount of principal, seeking damages to recover lost revenue for the crops Plaintiff could not plant because Plaintiff's seed money was held in escrow, and seeking punitive damages. See Turner v. United States of America, No. 117-87C.

Following trial in May 1991, in case CV-S-89-575-HDM (LRL), the Court decided that Plaintiffs, Wayne and Janice Turner, were entitled to all funds held in escrow. The Government then obtained a stay order on the escrow funds pending a possible appeal.

The parties to the Claims Court case subsequently entered into a settlement agreement which in part provided that all Plaintiff's claims in the various actions would be settled. The parties entered into joint stipulations of dismissal with prejudice in the United States Claims Court and the United States District Court actions respectively. Finally, pursuant to the Settlement Agreement, the escrow company holding the funds released those monies to Turner.

After FmHA attempted to re-negotiate the lien on Plaintiff's Farm, Plaintiff filed the instant action.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence

of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## III. Choice of Law

■ "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989). Plaintiff argues that Nevada contract law governs the interpretation of the Settlement Agreement.

■ As a general rule, principles of local law govern the construction and enforcement of settlement agreements. *Air Line Stewards & Stewardesses Assoc., Local 550 v. Trans World Airlines*, 713 F.2d 319, 321 (7th Cir.1983); *Jeff D.*, 899 F.2d at 759 (applying Idaho law to interpret a settlement agreement between private parties); *United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992). However, when the United States is a party to a contract entered

pursuant to federal law, federal law controls.[2] *United States v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1032 (9th Cir.1989); *Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.1983), *cert. denied,* 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983). In this case, the United States through the Attorney General is a party to the Settlement Agreement, and the dispute stems from the RDA, 7 U.S.C. §§ 1921 to 1936, a federal law. The Court therefore will apply federal law in interpreting this Settlement Agreement.

## IV. Interpretation of the Settlement Agreement

■ General principles of contract law govern this Court's inquiry. *Kennewick Irrigation Dist.,* 880 F.2d at 1032. The Court must read the contract as a whole and interpret every part with reference to the whole. *Id.* Furthermore, the Court must give preference to reasonable interpretations as opposed to those that are unreasonable. *Id.* *See also NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 681 (D.C.Cir.1985) (contract interpretation requires courts to give effect to the mutual intentions of the parties).

■ An ambiguity in a contract creates a question of fact. *State Farm Mut. Auto*

*Ins. Co. v. Fernandez,* 767 F.2d 1299, 1301 (9th Cir.1985). If a contract provision is reasonably susceptible to more than one construction or interpretation, it is ambiguous. *Kennewick Irrigation Dist.,* 880 F.2d at 1032; *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 619 (9th Cir.1981). The existence of an ambiguity is a question of law for this Court. *State Farm,* 767 F.2d at 1301.

■ There are two versions of the Settlement Agreement.[3] Both are dated June 21, 1991, and both are signed by both parties. The Plaintiff asserts that the Government, through Paragraph 14 of the Settlement Agreements,[4] expressly abandoned all claims to the FmHA loan, and abandoned all claims relating to the litigation over the funds in escrow. As a result, Plaintiff argues, under either version of the Settlement Agreement, the Government released any claim to the total principal and accrued interest under the FmHA note.

The introductory paragraph of both Settlement Agreements provides as follows:

> For the purposes of disposing of plaintiffs' claims, . . . and for no other purpose, the parties hereby stipulate and agree as follows:

Settlement Agreements, Exhibits 1 and 2. Plaintiff's claims sought judgment against

---

2. However, state law applies in interpreting a contract when no substantial federal rights or duties hinge on the litigation's outcome and there is little need for a nationally uniform body of law. *Miree v. DeKalb County,* 433 U.S. 25, 31–33, 97 S.Ct. 2490, 2494–96, 53 L.Ed.2d 557 (1977) (applying state law to determine if petitioners are third party beneficiaries to a contract between county and Federal Aviation Administration). In this case, the duties of the United States are at issue and the need for uniformity in interpretation of government contracts applies. The Court therefore finds that the exception is not applicable to this case.

3. The version of the Settlement Agreement Plaintiff filed as the correct version shall be referred to as Version 1. *See* Settlement Agreement, attached as Exhibit 1 to Plaintiff's Renewed Motion for Summary Judgment (# 20). The version of the Settlement Agreement Defendant filed as the correct version shall be referred to as Version 2. *See* Settlement Agreement, attached as Exhibit 2 to Plaintiff's Renewed Motion for Summary Judgment (# 20).

4. Paragraph 14 of Version 1 of the Settlement Agreement provides:

> Except for the obligations set forth in paragraphs 11, 12, and 13 above, the parties release and abandon any and all claims against each other, their agents and employees, *relating to the loan referenced in paragraph 1 above,* which could have been raised in such actions, including, but not limited to, all claims for liquidated damages, compensatory damages, and exemplary damages irrespective of whether they have been in any cases.

(emphasis added). Paragraph 14 of Version 2 of the Settlement Agreement provides:

> Except for the obligations set forth in paragraphs 11, 12, and 13 above, the parties release and abandon any and all claims against each other, their agents and employees, *relating to the matters involved in the aforementioned suits* and which could have been raised in such actions, including, but not limited to, all claims for liquidated damages, compensatory damages, and exemplary damages irrespective of whether they have been in any cases.

(emphasis added).

the United States "for release of the funds held in escrow and for damages for lost crops and for punitive damages." Settlement Agreements, para. 5 and 7, Exhibits 1 and 2.

Paragraph 13 of both Settlement Agreements are identical and set forth the performance requirements of the United States.[5] In order to fully satisfy Plaintiff's claims against the United States: (1) the United States agreed not to appeal; (2) the United States agreed to request that the District Court lift the stay on the escrowed funds; and (3) the United States agreed to notify First American Title Company and Primerit Bank that the funds should be released for the Plaintiffs. Settlement Agreements, Exhibits 1 and 2, para. · 13. The Settlement Agreements do not require the United States to release the lien on Plaintiff's land, but address only the escrow funds, the essence of Plaintiff's lawsuits in the District Court and the Court of Claims.

Furthermore, Paragraph 16 of both Settlement Agreements states as follows:

> Compliance with the terms of paragraph 13 shall be a full discharge to the United States of all claims and demands arising out of the matters involved in these cases or controversies.

Settlement Agreements, Exhibits 1 and 2. The terms of Paragraph 16 of both Settlement Agreements therefore prohibit Plaintiffs from seeking further relief which arises out of the matters of the two settled cases from the United States upon completion of the three performance requirements listed in Paragraph 13. Settlement Agreements, Exhibits 1 and 2.

Finally, Paragraph 17 of both Settlement Agreements reiterates the purpose of the Settlement Agreement:

It is agreed that this stipulation is for the purpose of settling these cases, and for no other purpose. . . .

Settlement Agreements, Exhibits 1 and 2. The Court finds that the plain meaning and reasonable interpretation of both Settlement Agreements was to settle the two cases with regard to the escrow funds and nothing more. *See Kennewick,* 880 F.2d at 1032. The Court also finds that under either version, Paragraph 14 is not reasonably susceptible to another construction or interpretation and is therefore not ambiguous. *See Castaneda,* 648 F.2d at 619.

▆▆▆ Plaintiff asserts that this Court must apply the *contra proferentem* rule of construction against the United States and in favor of the Plaintiff. The *contra proferentem* rule states that a Court must construe a contract against the party that drafted it. *Hills Materials Co. v. Rice,* 982 F.2d 514, 516 (Fed.Cir.1992). In general, this rule applies to the Government as well as to private parties. *Id.* at 517. However, the Ninth Circuit does not universally or automatically apply the rule in contracts other than those for insurance. *Eley v. Boeing Co.,* 945 F.2d 276, 280 (9th Cir.1991). The rule does not apply when equal strength parties bargain at arm's length. *Id.* Finally, the rule only applies where there are two reasonable interpretations of ambiguous contract provisions. *See Hills Materials,* 982 F.2d at 516. In light of the Court's finding above that Paragraph 14 is not reasonable susceptible to another construction and is not ambiguous, the Court finds that the *contra proferentem* rule does not apply in this case.

## V. Authority to Settle the Lien

▆▆ In further support of its argument that the Settlement Agreement did not release the lien on Plaintiff's land, the Govern-

---

5. Paragraph 13 of both Settlement Agreements states:

   Under the terms stated below, the United States of America agrees that it will not appeal the decision in district court cases, that it will immediately request that the district court lift the stay entered on June 5, 1991, that it will immediately notify First American Title Company and Primerit Bank, holding funds for Lawyer's Title Insurance Company that the funds retained therein should be released to plaintiffs immediately, and that these actions will constitute full satisfaction of all of plaintiff's claims arising out of Claims Court No. 117–87C and district court Nos. CV–5–89–575–HDM (LRL) [sic] and CV–5–84–362–HDM (LRL) [sic], or related to the matters involved in the aforementioned suits, including, but not limited to, all claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages, whether or not included in the complaints.

   Settlement Agreements, para. 13, Exhibits 1 and 2.

ment asserts that the FmHA officials who signed both versions of the Settlement Agreement only had authority to settle the claims as they related to the release of the funds in escrow, and not the lien on Plaintiff's farm. 28 C.F.R. Ch. 1, Part O, Subpart Y, Appendix, Directive No. 176–91, § 1(b)(1) (1991) states as follows:

> United States Attorneys, Branch, Office and Staff Directors, and Attorneys-in-Charge of Field Offices with respect to matters assigned or delegated to their respective components are hereby delegated the authority to:
>
> > (1) Accept offers in compromise of claims on behalf of the United States;
> >
> > > (a) In all cases in which the gross amount of the original claim did not exceed $500,000; and,
> > >
> > > (b) In all cases in which the gross amount of the original claim was between $500,000 and $5,000,000, so long as the difference between the gross amount of the original claim and the proposed settlement does not exceed $500,000 or 15 percent of the original claim, whichever is greater....

28 C.F.R. Ch. 1, Part O, Subpart Y, Appendix, Directive No. 176–91, § 1(b)(1) (1991). These regulations further provide that those parties who deal with the Government are put on constructive notice of the authority of Government agents with whom they deal. *See White v. United States,* 639 F.Supp. 82, 90 (M.D.Pa.1986), *aff'd,* 815 F.2d 697 (3d Cir.1987). This is true even when the Government agents represent that they have the authority to settle that particular case. *Id.*

Sharon Eubanks' signature appears on the Settlement Agreement. Sharon Eubanks is an Assistant Director of the FmHA. However, under 28 C.F.R. Ch. 1, Part O, Subpart Y, Appendix, Directive No. 176–91, § 1(b)(1) (1991), an Assistant Director does not have the authority to settle claims.

A Director may settle cases under this provision in two manners. First, a Director may settle claims up to $500,000. *See* 28 C.F.R. Ch. 1, Part O, Subpart Y, Appendix, Directive No. 176–91, § 1(b)(1)(a). However, Plaintiff asserts that under the Settlement

Agreement the United States released both the escrow funds and the FmHA loan. The escrow funds totaled approximately $260,000. The outstanding balance on Turner's FmHA loan was $376,000 principal. Together these items have a value of $636,000., so the Director would not have the authority to settle these claims under section 1(b)(1)(a).

28 C.F.R. Ch. 1, Part O, Subpart Y, Appendix, Directive No. 176–91, § 1(b)(1)(b) (1991) applies when the gross amount of the original claim is between $500,000 and $5,000,000. Under this regulation, a Director may only settle cases where the difference between the gross amount of the original claim and the proposed settlement does not exceed $500,000 or 15% of the original claim, whichever is greater. Under Plaintiff's reading of the Settlement Agreement, the gross amount of the original claim is $636,000. The settlement Turner urges gives the United States nothing, so the difference exceeds $500,000 or 15% of the original claim ($95,400.). The Court therefore finds that those who signed the Settlement Agreement did not have the authority to settle the lien on Turner's land.[6]

The United States cannot be bound to a settlement agreement where the agent of the United States who signed the agreement lacked the authority to enter into the agreement. *Bohlen v. United States,* 623 F.Supp. 595, 597 (D.C.Ill.1985); *White v. United States,* 639 F.Supp. at 82; *United States v. Dantzler Lumber & Export Co.,* 833 F.Supp. 927, 930 (Ct. Int'l Trade 1993). The Court therefore finds that an interpretation of the Settlement Agreement that the United States released the claim regarding the lien on Plaintiff's land is unreasonable.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment is denied;

IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment is granted and this case dismissed.

---

**6.** The Assistant Attorney General of the litigating division would have the authority to settle a claim of $636,000 under 28 C.F.R. § 0.160 (1991).