**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| In re: | ) | BAP No. NV-16-1211-LJuKu |
|---|---|---|
| MARK J. ESCOTO, | ) | Bk. No. 2:13-bk-10096-mkn |
| Debtor. | ) | Adv. No. 2:13-ap-01058-mkn |
| _____ | ) | |
| ROBERT G. HILLSMAN, | ) | |
| Appellant, | ) | |
| v. | ) | **MEMORANDUM**[*] |
| MARK J. ESCOTO, | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on February 24, 2017
at Las Vegas, Nevada

Filed - March 21, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Bankruptcy Judge, Presiding

_____

Appearances:    Candace Carlyon of Morris Polich & Purdy LLP
                argued for Appellant Robert G. Hillsman; Samuel A.
                Schwartz of The Schwartz Law Firm argued for
                Appellee Mark J. Escoto.

_____

Before: LAFFERTY, JURY, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

This is the second appeal arising from this adversary proceeding to determine whether Debtor Mark J. Escoto's debt to Appellant Robert G. Hillsman is dischargeable.

Hillsman loaned $200,000 to Escoto to fund Escoto's litigation against the contractor and others who built Escoto's home; the loan was due on demand, in three years, or upon settlement of the litigation, whichever came first. Escoto failed to notify Hillsman of settlements that occurred within the three-year loan term; when the initial term expired Escoto requested, and Hillsman granted, a one-year extension of the loan term.

After Escoto filed his chapter 7[1] case, Hillsman sought a declaration of nondischargeability under § 523(a)(2)(A) of the amounts due under the note based on Escoto's alleged fraud in procuring an extension of the loan term. After trial, the bankruptcy court found that Hillsman had proven all the elements of a nondischargeability claim under § 523(a)(2)(A) except proximate cause because Hillsman had not shown that he had valuable collection remedies available when he consented to the extension and that those remedies had lost value. Hillsman appealed to this Panel, which concluded that Escoto's fraudulent nondisclosure of the settlements resulted in an extension of credit for purposes of § 523(a)(2); thus, the Panel found that the bankruptcy court erred in focusing its proximate cause

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "NRS" references are to the Nevada Revised Statutes.

analysis on the period from and after the date Hillsman granted the extension. The Panel remanded for the bankruptcy court to make additional or amended findings, focusing on the period from and after the settlements.

Upon remand, after further briefing and a hearing, the bankruptcy court issued a supplemental memorandum decision finding that, upon reexamining the evidence, Hillsman had still failed to meet his burden of proof to show proximate cause because he failed to establish the amount by which any available remedies lost value. We AFFIRM.

**FACTS[2]**

In July 2005, Escoto and his non-debtor spouse, Shirley A. Escoto,[3] filed suit in state court against a contractor, Christopher Homes, and certain subcontractors for claims arising out of construction defects in building their home. While the lawsuit was pending, Escoto asked Hillsman, a friend and dental patient, for a loan to fund the litigation.

In March 2008, Hillsman lent Escoto $200,000. The debt is evidenced by a demand promissory note bearing interest at seven percent per annum and providing for interest-only payments during the term of the note. The note was due on demand, in three years (March 11, 2011), or upon settlement of the lawsuit "by and between [the Escotos] and the entity known as CHRISTOPHER HOMES et al." The note referenced Escoto granting security interests

---

[2] In this factual recitation, we borrow heavily from the prior Panel's statement of facts in BAP No. NV-14-1358-KuDJu.

[3] The Escotos are now divorced.

-3-

in his dental practice, office building, and other personal property, but Hillsman never took steps to perfect those security interests.  The note granted Hillsman "the right to remove any and all possessions of Escoto et al[.] to be sold as necessary to recover debt in full and to effect garnishment of any paycheck, settlement monies, or other assets without the need of a court order regarding same."

In July 2008, Escoto settled with all defendants in the construction defect litigation except for the plumbing subcontractor.  This $350,000 settlement was approved by the state court; Escoto received net proceeds of $118,000.  In October 2009, Escoto settled with the remaining defendant for an additional $350,000.  The state court approved that settlement in November 2009, and in February 2010 Escoto received net proceeds of $142,000.  Despite numerous and extended interactions between the friends, Escoto did not tell Hillsman about either settlement.

Escoto failed to make several interest payments required by the note.  In March 2011, when the note came due, Escoto requested an extension of the loan term.  Unaware of the settlements, Hillsman agreed to the request, and the parties executed an agreement extending the repayment period for one year but otherwise leaving the terms of the demand promissory note unchanged.  Escoto's delinquency under the terms of the note continued.  In August 2012 the two friends met, and Escoto reaffirmed his commitment to repay the note but once again did not disclose the settlements.

Approximately five months later, on January 4, 2013, Escoto

-4-

filed a chapter 7 petition. After receiving notice of the petition, Hillsman contacted an attorney and finally learned that Escoto had settled the construction defect litigation four years earlier.

After trial, the bankruptcy court found that Hillsman had proved all elements necessary to establish the debt as nondischargeable with the exception of proximate cause. Specifically, the bankruptcy court ruled that Hillsman failed to demonstrate that he possessed valuable collection remedies on the date of the extension and that those remedies lost value during the renewal period.

In coming to this conclusion, the bankruptcy court examined the value of the potential remedies available to Hillsman at the time he agreed to the extension. Noting that there was no equity in the pledged business properties even if Hillsman had perfected his liens, the bankruptcy court discounted Hillsman's remedies as a secured creditor. As an unsecured creditor, Hillsman could pursue informal collection remedies such as telephone calls and correspondence, but the bankruptcy court found little value in these activities. The court then considered Hillsman's ability to obtain a judgment and found that he failed (1) to identify assets available to satisfy a judgment that Escoto could not exempt under state law; and (2) to demonstrate how the value of his status as a judgment creditor declined over the extension period.

Finally, the bankruptcy court considered Hillsman's equitable remedies in the form of a constructive trust created to recognize Hillsman's interest in the settlement proceeds. The

-5-

court found such equitable remedies unavailable as the record indicated that Escoto had disposed of the proceeds prior to the extension date.

The bankruptcy court entered judgment in favor of Escoto on July 3, 2014, and Hillsman appealed to this Panel (BAP No. NV-14-1358-KuDJu). In its memorandum decision issued May 15, 2015, the Panel held that the bankruptcy court had applied the correct legal standard for determining proximate cause and that the bankruptcy court's finding that Hillsman failed to establish proximate cause was not clearly erroneous. However, the Panel found that the bankruptcy court erred by limiting its proximate cause analysis to the date of the extension agreement in March 2011. Instead, the Panel held that Escoto's concealment of the settlements resulted in an extension of credit for purposes of § 523(a)(2). Thus, the Panel vacated the judgment and remanded for additional findings. The Panel instructed:

> In light of our holding that Escoto effectively obtained an extension of credit when he failed to disclose the settlement and thereby prevented Hillsman from immediately demanding repayment in accordance with the terms of the note, on remand, the bankruptcy court will need to focus on this earlier time period and make additional or amended findings in order to determine whether all of the § 523(a)(2)(A) elements were satisfied.[4]

In response to the Panel's mandate, Hillsman moved for entry of findings, conclusions and judgment on the record or to reopen discovery and set a new trial date. Escoto opposed reopening the record. On July 1, 2016, the bankruptcy court granted the motion

---

[4] The previous Panel did not specify whether the relevant time period was the first settlement in July 2008 or the second settlement in October 2009, or both.

-6-

for entry of additional or amended findings and denied the alternative request to reopen discovery and set a new trial date. The bankruptcy court concurrently issued a Supplemental Memorandum Decision After Trial ("Supplemental Memorandum") finding that, upon reexamining the evidence in light of the BAP's memorandum decision, Hillsman had still failed to meet his burden of proof to show proximate cause because he failed to establish the amount by which any remedies lost value. The bankruptcy court also entered judgment in favor of Escoto.

Hillsman timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in concluding that Hillsman failed to meet his burden of proof regarding proximate cause?

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. Appx. 176 (9th Cir. 2010).

A bankruptcy court's interpretation of a contract is a question of law that we review de novo. Estate of Short v. Payne (In re Payne), 323 B.R. 723, 727 (9th Cir. BAP 2005).

A bankruptcy court's findings regarding proximate cause under § 523(a)(2)(A) may be reversed only if clearly erroneous. Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir.

-7-

1991).  We do not consider a finding of fact clearly erroneous unless the finding is "illogical, implausible, or without support in the record."  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

To prove causation on a § 523(a)(2)(A) claim based on an extension, a renewal, or a refinance, a creditor must show "that it had valuable collection remedies at the time it agreed to renew, and that such remedies lost value during the renewal period."  Siriani v. Nw. Nat'l Ins. Co. of Milwaukee, Wis. (In re Siriani), 967 F.2d 302, 306 (9th Cir. 1992).  See also Cho Hung Bank v. Kim (In re Kim), 163 B.R. 157, 161 (9th Cir. BAP 1994), aff'd, 62 F.3d 1511 (9th Cir. 1995).

To comply with Siriani and demonstrate that the extension proximately caused his loss, Hillsman needed to show: (1) that he possessed valuable collection remedies at the time the loan term was extended (here, at the time of settlement(s)); and (2) a depreciation in the value of those remedies during the extended repayment period.  See In re Kim, 163 B.R. at 161.[5]  On remand, the bankruptcy court found that although Hillsman had remedies available to him at the time of the settlements, he had not established the value of those remedies or the amount by which they diminished in value during the relevant time period.

---

[5] Hillsman argues that Siriani and Kim erroneously impose an additional burden on a plaintiff which is not part of the plain language of § 523(a)(2) and urges, if this matter goes before the Ninth Circuit Court of Appeals, that those cases should be overruled.

-8-

**1. The Promissory Note**

The bankruptcy court first examined the language of the promissory note:

> FOR VALUE RECEIVED, the undersigned, Mark J. Escoto and Shirley A. Escoto attaching by ownership the Pledged Building and all attachmnets [sic] owned by the Nevada-listed LLC known as JAEMSS, LLC (a Nevada Limited-Liability Company (the "Borrower"), hereby acknowledges itself indebted to Robert G. Hillsman a single man (the "Lender") and promises to pay ON DEMAND to or to the order of the Lender at the end of a three year period from the date of signatures affixed (otherwise known as a BALLOON PAYMENT for the SUM IN TOTAL of $200,00.00 [sic] or upon settlement of the lawsuit filed by and between the above-listed Borrowers, the "Escoto's" joint and severably- [sic] and the entity known as CHRISTOPHER HOMES et al. . . .
>
> . . . .
>
> . . . . Parties do hereby further agree that Mark Escoto states as Owner and Manager of JAEMSS, LLC-Nevada, Escoto states and by this note pledges all equity in the LLC including his Dental Practice and the Building housing same . . . as collateral and security for this note, and furthermore that he will produce documents indicating that said assets are attached only by his lending institution as the first holder of lien and that at no time shall Escoto et al place any indivual [sic] or entity ahead of Hillsman who by this note assumes second position towards the listed assets.
>
> . . .
>
> . . . Escoto et al further pledge any and all personal possessions holdings and items of value as security and collateral for payment of this note and by this note grant Lender-Hillsman the right to remove any and all possessions of Escoto et al to be sold as necessary to recover debt in full and to effect garnishment of any paycheck, settlement monies, or other assets without the need of a court order regarding the same. . . .

The bankruptcy court found ambiguities in the note, which it construed against Hillsman as the drafter. See Dickenson v. State Dept. of Wildlife, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (Nev. 1994) (ambiguous contract construed against the drafter). Hillsman argues that the bankruptcy court erred in construing the

-9-

note against him, citing Ninth Circuit case law holding that ambiguous contracts need not be construed against the drafter when the parties to the contract are of equal strength and bargaining at arms' length. Eley v. Boeing Co., 945 F.2d 276, 280 (9th Cir. 1991); Turner v. United States, 875 F. Supp. 1430, 1435 (D. Nev. 1995), aff'd sub nom. Turner v. U.S. Through U.S. Dept of Agric., Farmers Home Admin., 91 F.3d 1274 (9th Cir. 1996). However, both of these cases applied federal law, not Nevada state law, in construing the contracts at issue (an ERISA contract resulting from a collective bargaining agreement and a settlement agreement where the United States was a party); Hillsman has cited no Nevada Supreme Court cases subsequent to Dickenson holding that contracts need not be construed against the drafter when the parties are of equal bargaining power. Therefore, the bankruptcy court did not err in construing the note against Hillsman.

**2. The bankruptcy court did not err in concluding that the relevant time for its analysis was the time of the second settlement in late 2009.**

One ambiguity involved the provision that the note was due in three years or "upon settlement of the lawsuit . . . between . . . the [Escotos] . . . and the entity known as CHRISTOPHER HOMES et al." No witness had testified at trial as to whether this language referred to the settlement with Christopher Homes or with all defendants in the lawsuit; thus the bankruptcy court construed the language against Hillsman in concluding that the language referred to the second settlement date in 2009.

Hillsman argues that the bankruptcy court's interpretation

-10-

of these provisions was erroneous. He contends that the note matured at the time of the first settlement with Christopher Homes because the note specifically refers to Christopher Homes and because the litigation timeline the Escotos provided to Hillsman before he agreed to loan the money referenced only Christopher Homes. Hillsman also argues that the initial draft of the note provided that it would be due either on March 1, 2011 or at the time of a final judgment in the litigation. The parties replaced this language with reference to a settlement, which Hillsman argues indicates an agreement that no final judgment needed to be entered to trigger maturity. As noted, however, the bankruptcy court did not err in construing the note against Hillsman.

Importantly, the bankruptcy court also concluded that even if it had examined remedies available at the time of the first settlement with Christopher Homes in 2008, the type and value of the collection remedies available at that time were never proven at trial either. As will be discussed, the evidence supports this conclusion.

**3. The bankruptcy court did not err in finding that Hillsman did not show that he had valuable collection remedies as a secured creditor.**

The bankruptcy court found that the promissory note contained a pledge of the equity in Escoto's dental practice and building as well as a pledge of Escoto's personal property but that the pledge of the business assets was at best a second position lien because the language of the note indicated Hillsman was in second position. But because no evidence was provided as

-11-

to the amount of any senior liens on that collateral, the bankruptcy court also found that it was impossible to determine the value of any collection remedy against those assets. We find no error in this analysis.

As to the pledge of "any and all personal possessions holdings and items of value," the bankruptcy court concluded that this pledge encompassed only tangible items and not intangible interests such as legal claims and proceeds thereof (i.e., the settlement proceeds). The bankruptcy court noted that the language granting Hillsman the "right to remove any and all possessions of Escoto et al to be sold as necessary to recover the debt" was consistent with a pledge of tangible assets. The note also granted Hillsman the right to removal of any and all possessions "to effect garnishment of any paycheck, settlement monies, or other assets without the need of a court order regarding the same." The bankruptcy court noted that this latter provision was consistent with a pledge of tangible assets and a self-help remedy with respect to those assets, but that it was inconsistent with a garnishment remedy against interests held by third parties.

Importantly, the bankruptcy court found that the note did not contain a pledge of the settlement proceeds to Hillsman. Hillsman argues that this finding was clearly erroneous because in the parties' Joint Pretrial Memorandum, they stipulated that the note "contained a pledge of the proceeds of the settlement of the State Court Action" and that "Escoto represented that he would repay the Hillsman Loan with the proceeds of the State Court Action." And both Hillsman and Escoto testified at trial

-12-

that the settlement proceeds were pledged to Hillsman. The bankruptcy court did not reference these stipulated facts or testimony in its Supplemental Memorandum. However, we see no error in the bankruptcy court's interpretation of the evidence, the stipulation and testimony notwithstanding, or in its conclusion, which was based on the plain language of the note.

Hillsman's argument that the bankruptcy court was essentially bound by the assertions of the stipulation (and the admissions in the testimony) that the note included a pledge of the settlement proceeds is misguided in two respects. First, it ignores the mandate from this Panel after the first appeal; second, it would effectively require the bankruptcy court to inappropriately cede both the "fact finding" and the "law concluding" judicial functions to the parties.

In the first appeal, the Panel determined that there was no error assignable to the bankruptcy court's findings of fact or generally to the legal standard the court applied with respect to a showing of proximate cause for Hillsman's loss. However, the Panel determined that there was error in the **timing** of the bankruptcy court's application of the standard in these circumstances and thus remanded for the bankruptcy court to resolve one question: did Hillsman have valuable collection rights as of the settlement date that decreased in value?

The question posed to the bankruptcy court on remand was not an abstract hypothetical; neither should the answer, nor the means used to arrive at the answer, be abstract. Whether a party possessed **valuable collection rights** as of a particular point in time is a highly specific, "real world" question that requires

-13-

the finder of fact to review the evidence and determine, in the consensual lien context, (a) whether a security interest was granted, (b) whether it was enforceable, and (c) whether in light of all of the pertinent circumstances, enforcement of the interest would have yielded a material recovery.

Measured against these inquiries, the stipulation falls woefully short. In the first place, it purports to answer only the first of the relevant questions: was a security interest actually granted? And the stipulation "answers" it in the most non-specific, non-factual, entirely conclusory manner imaginable: "The Note contained a pledge of the proceeds of the settlement of the State Court Action." The stipulation does not identify a provision or particular language in the note that granted such an interest or provide any specific factual support for its conclusion. Indeed, what it really appears to say is "we think that the note had the following effect, or we intended that it would have that effect." So viewed, the statement that the note contained a pledge of the settlement proceeds is not an agreed finding of fact at all; rather, it is a stipulated conclusion of law which, if permitted, would remove the adjudicative function from the court on the only material question posed on remand. This is a completely inappropriate result.

The stipulated fact does not address, let alone resolve favorably, whether the security interest was enforceable--which would require at a minimum a showing that a judicial officer would have agreed that the note contained a pledge of the settlement proceeds--and whether material recoveries might have been available. And clearly, once the bankruptcy court here

-14-

posed those questions, it made factual findings appropriate to the evidence presented. The bankruptcy court found, for example, that the note's only reference to the settlement proceeds is the grant to Hillsman of what appears to be a self-help remedy to "effect garnishment of any paycheck, settlement monies, or other assets without the need of a court order."

As counsel for Hillsman conceded at oral argument on this appeal, the language of the note concerning a pledge of settlement proceeds was at best "ambiguous." Frankly, we believe it not particularly ambiguous at all, for the many reasons cited by the bankruptcy court in its disposition of this matter--and that is the point: once the bankruptcy court moved past the barriers imposed by the stipulated facts, as we believe it did appropriately, and reviewed the evidentiary basis for the claim that the note provided a valuable collection right, i.e., an enforceable consensual lien in the settlement proceeds, it is impossible to conclude, on these facts, that its interpretation of the note was erroneous.

Hillsman nonetheless contends that the "pledge" of settlement proceeds was enforceable under Nevada law, citing May v. G.M.B., Inc., 105 Nev. 446, 451-52, 778 P.2d 424, 427-28 (1989) (holding that a party's failure to perfect its security interest in a motor vehicle did not impact the enforceability of the security agreement as between the parties). However, because the note contained no language granting Hillsman a security interest in the proceeds, May does not help Hillsman. Under Nevada law, attachment occurs when the debtor has signed a security agreement that contains a description of the collateral,

-15-

value has been given, and debtor has rights in the collateral. Id. at 452, 778 P.2d at 427-28 (citing NRS § 104.9203). In the absence of language granting a security interest in the proceeds, no attachment occurred, and thus no enforceable security agreement was formed.

Even if one could cobble together in the language of the note a grant of a security interest, such interest was admittedly unperfected. Even if such interest were enforceable between the parties, it would have been subordinate to any properly perfected security interest or potential lien creditors. Neither the stipulated "fact" that the note contained a pledge of the settlement proceeds nor any evidence presented by Hillsman addressed, let alone resolved favorably for Hillsman, these difficult and material factual issues.

Accordingly, the parties' 2014 stipulation in this litigation is immaterial to whether the note actually granted Hillsman a security interest that he could have enforced in 2008 or 2009. We find no error in the bankruptcy court's findings and conclusions on these points.

**4. The bankruptcy court did not err in finding that Hillsman failed to show that he had valuable remedies available as a judgment creditor.**

The bankruptcy court found that at the time of the settlements, Hillsman could have sued on the note and obtained a judgment for the full amount, and that if he established that his legal remedies were inadequate, he could have asked the court to impose equitable remedies such as a constructive trust or equitable lien. Additionally, the bankruptcy court agreed with

-16-

Hillsman that he could have asked for prejudgment remedies such as a writ of possession, a temporary restraining order, or a prejudgment writ of attachment.

However, the bankruptcy court found that regardless of what remedies may have been theoretically available to Hillsman, he had not established the facts necessary to determine that those remedies might have been imposed; to obtain a writ of possession or a temporary restraining order, Hillsman would have been required to show that he was entitled to possession. NRS §§ 31.859, 31.853, 31.850. To obtain a writ of attachment after notice, Hillsman would have had to show that the note was not secured by a pledge of real or personal property, or if it was, that the collateral was insufficient to secure the sum due; to obtain such a writ without notice, Hillsman would have had to show that Escoto was disposing of or concealing assets, and his remaining assets were insufficient to satisfy Hillsman's claim. NRS §§ 31.013(1)(a) and 31.017(5). Hillsman did not demonstrate that he could have made the required showings.

The bankruptcy court also found that Hillsman had failed to establish the value of any of those remedies at the relevant times or the amount by which they lost value. At trial, the only documentary evidence of Escoto's finances was Escoto's Financial Disclosure Form filed in his marital dissolution proceeding on December 27, 2012, and Escoto's schedules and statements filed in the chapter 7 case on January 4, 2013. However, Escoto testified that the information on the Financial Disclosure Form was not correct. More importantly, no documentary evidence was presented that established the Escotos' income, expenses, and liabilities

-17-

at the time of the settlements in 2008 and 2009. The Escotos also testified regarding their financial condition, but no documentary evidence was presented to corroborate that testimony and, again, the oral testimony did not establish the Escotos' financial condition during the relevant time period.

As for the settlement proceeds, Escoto testified that he received $118,000 from the first settlement at the end of 2008, and that those funds were used to pay for legal fees and experts to continue the litigation against the plumbing contractor; the evidence also showed that Escoto received net proceeds of $142,000 sometime after the state court entered a distribution order in February 2010. However, no documentary evidence was produced pinpointing when the funds came into Escoto's possession or what happened to those funds.

Ms. Escoto testified that before the couple's first divorce in 2009,[6] there was $370,000 in their joint checking account; after the couple separated, Ms. Escoto attempted to make a withdrawal from that account and was informed that Escoto had withdrawn all but $19.70. Ms. Escoto's testimony was vague as to the timing of the withdrawal; she testified only that it occurred sometime after September 2009. Again, no documentary evidence was presented to clarify the time period when the joint account had contained $370,000 or when those funds were withdrawn.

Hillsman also points out that Escoto's bankruptcy schedules show that Escoto received wages of $160,000 in 2011, and that as

---

[6] The couple's first divorce in 2009 was set aside as having been fraudulently obtained; thereafter, the couple divorced a second time.

-18-

of the petition date Escoto was earning over $19,000 per month. Hillsman also points to the reported income of Escoto's businesses in 2012 and 2013. Theoretically, had Hillsman obtained a judgment, he may have been able to garnish that income, but Hillsman provided no evidence of how much of those funds would have been available. More importantly, this information alone does not demonstrate that Hillsman had valuable collection remedies available at the time of either settlement.

In its prior decision, this Panel stated:

> Identifying funds to which Escoto may have had access is insufficient. Siriani requires a creditor to demonstrate the existence of valuable collection remedies at a specific point in time. By simply pointing to evidence of certain funds, Hillsman did not necessarily place these funds in Escoto's possession at the time the extension agreement was entered into or during the extension period. For instance, Ms. Escoto testified that Escoto withdrew $370,000 from the couple's joint bank account on an unidentified date. Even if the Panel assumes her testimony is true, Hillsman provided no evidence that Escoto possessed these funds at any time relevant to the extension agreement.

Finally, Hillsman argues that the mere fact that the "assets listed above" were gone as of the petition date establishes loss, citing Ojeda v. Goldberg, 599 F.3d 712 (7th Cir. 2010). It is not clear exactly what assets Hillsman refers to; presumably it is the wage and business income alluded to above. Again, this argument was rejected by the prior Panel:

> A second defect with Hillsman's argument is that placing assets or funds in Escoto's possession at the relevant time does not end the proximate cause analysis. In addition to identifying the existence of remedies, Siriani requires a creditor to show a reduction in the value of such remedies during a specific period of time. Assuming Escoto possessed funds or available assets at the requisite point in time, Hillsman did not present any evidence that these

-19-

funds or assets were dissipated during the extension period.

## CONCLUSION

For all of these reasons, we find no error in the bankruptcy court's finding that Hillsman failed to meet his burden of showing that he had valuable collection remedies available at the time of settlement and that those remedies lost value.

Accordingly, we AFFIRM.