**In re Jong Gil KIM and Jung W. Kim, Debtors.**

**CHO HUNG BANK, Appellant,**

**v.**

**Jong Gil KIM and Jung W. Kim, Appellees.**

BAP No. CC–93–1365–MeOPe.
Bankruptcy No. LA 92–27121 CA.
Adv. No. LA 92–02739 CA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 21, 1993.

Decided Jan. 24, 1994.

Henry Gweon, Los Angeles, CA, for Cho Hung Bank.

David Zweig, Los Angeles, CA, for Jong Gil Kim and Jung W. Kim.

Before MEYERS, OLLASON and PERRIS, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

The bankruptcy court granted summary judgment in favor of the defendant in a nondischargeability action under Bankruptcy Code ("Code") Section 523(a)(2) on the basis that the plaintiff had not advanced additional funds in connection with the extension or renewal of credit.

We **REVERSE** and **REMAND**.

### II

### FACTS

The appellant, Cho Hung Bank ("Bank"), held a junior lien on real property located in Glendale, California ("Property"). Apparently the owner of the Property filed for bankruptcy sometime in 1987. In October of 1987 a senior lienholder obtained relief from the automatic stay so that it could conduct a foreclosure sale. The Bank alleges that the appellees, Jong Gil Kim and Jung W. Kim ("Kims"), husband and wife respectively, approached the Bank offering to purchase the Property at the impending foreclosure sale and renovate it, all with the use of funds from the Bank. The Kims would then resell the property and repay the loan, plus the amount owed on the Bank's junior lien, from the sale proceeds.

On December 7, 1987, the Bank assigned its interest in the Property to Mrs. Kim. The foreclosure sale was eventually set for May 6, 1988. On May 4, 1988, the Kims received a loan of $150,000 from the Bank and in exchange executed a promissory note ("Note") for that amount to be paid in 150 days. The Note was unsecured and made no mention of the Property. The Kims purchased the Property at the foreclosure sale for approximately $110,000, taking title in the name of Mrs. Kim. Mr. Kim quitclaimed any interest he had to Mrs. Kim. Through an escrow opened on or about September 2, 1988, Mrs. Kim conveyed title to the Property to her brother and sister-in-law for approximately $190,000. The deed is dated September 6, 1988 and was recorded on October 28, 1988. The Note was still unpaid at the time this transfer was recorded.

Finally, by a letter dated December 29, 1988, the Kims requested an extension of time to repay the Note. The Kims represented that they were still in the process of selling the property and expected the deal to close within two months. The record also indicates that similar representations were made orally to a Bank representative around that same time. The Bank granted the extension and the Kims executed a promissory note with a stated amount of $150,000 dated December 31, 1988, with the same interest rate of 2% over the prime rate due in 92 days. No additional funds were advanced.

Instead of paying off the loan to the Bank the Kims used the proceeds from the sale of the property to purchase a liquor and grocery market in May 1989. The market business was not profitable and the Kims were unable to repay the Bank. The Bank finally sued and the Kims filed for bankruptcy. The Bank brought this action to declare the debt owed it nondischargeable pursuant to Code § 523(a)(2).[1]

The Kims brought a motion for summary judgment arguing that under § 523(a)(2) the Bank needed to have advanced "new money," at the time of the extension, in order to have a claim for nondischargeability. The Bank contended that no such requirement exists.

1. The Bank was apparently owed a great deal more than the $150,000 and filed a complaint to have those amounts also declared nondischargeable. The Bank only appeals that portion of the bankruptcy court's order which found the $150,000 dischargeable. Furthermore, the Bank limits the focus of its appeal to the extension granted in December of 1988. The Bank has not contended that the Kims initially obtained the funds through misrepresentations concerning how and when the Kims would repay the Bank.

The court granted summary judgment in favor of the Kims and the Bank appeals on that issue.

## III

### STANDARD OF REVIEW

■ An order granting summary judgment is reviewed *de novo. In re Baird,* 114 B.R. 198, 201 (9th Cir. BAP 1990). "The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all the evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *In re Yarbrow,* 150 B.R. 233, 236 (9th Cir. BAP 1993). Questions of statutory interpretation are reviewed *de novo. In re Orvco, Inc.,* 95 B.R. 724, 726 (9th Cir. BAP 1989).

## IV

### DISCUSSION

A. *A Claim Under § 523(a)(2) Does Not Require a Showing of New Money*

The bankruptcy court specifically found that "[t]he bank gave no new money or additional credit to the debtors when the bank extended the time to pay the note of May 4, 1988." This demonstrates that the court imposed a "new money" requirement. However, this Panel reaches the conclusion that there is no "new money" requirement under § 523(a)(2).

■ We begin first with the language of the statute. When "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (*quoting Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Section 523(a)(2) provides that the debtor cannot discharge a debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

■ The section clearly excepts a debt incurred by an extension of credit which the debtor obtains through fraudulent means. Nothing in the section requires that "an extension of credit" be joined by an advance of further funds in order for a creditor to have a claim for relief. *In re Duncan,* 123 B.R. 383, 386 (Bankr.C.D.Cal.1991). A logical reading of the plain language of the statute shows that if a creditor suffers damage, the proximate cause of which is the fraud of the debtor in obtaining an extension of credit, then the creditor should be able to prevent the debt from being discharged. *See generally In re Britton,* 950 F.2d 602, 604 (9th Cir.1991). This reading is consistent with the general policy that the discharge provisions are only intended to provide a fresh start for the honest but unfortunate debtor. *Britton, Id.* at 606. Furthermore, if Congress had wanted to include a "new money" condition certainly it could have. *See, e.g., Patterson v. Shumate,* — U.S. —, —, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("Congress, when it desired to do so, knew how to restrict the scope of applicable law...."); *see also Toibb v. Radloff,* 501 U.S. 157, —, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) ("Congress knew how to restrict recourse to the avenues of bankruptcy relief ...").

Although the inquiry could end there, the Panel also looks to legislative history for assistance. The remarks on the floor of Congress make it clear that Congress intended to codify the result of *In re Danns,* 558 F.2d 114 (2d Cir.1977). In that case, the debtor,

who had an outstanding loan, supplied a materially false financial statement in order to procure a second loan from the same lender. New York state law prohibited the lender from having more than one outstanding loan with the borrower. As a matter of course, the outstanding debt was rolled into the new loan. In the debtor's later bankruptcy, the lender moved under the Bankruptcy Act § 17(a) to have the whole amount of the loan declared nondischargeable. The creditor did not present any evidence that the original loan was renewed in reliance on the false representations. Instead, the evidence showed that the lender had renewed the first loan only because state law required the consolidation.

The court held that the statute barred "discharge only to the extent that the creditor could actually have relied upon the debtor's misrepresentation." 558 F.2d at 116. The court then ruled that the amount of the first loan was dischargeable because the lender had not shown any causal connection between the renewal of that loan and the debtor's misrepresentation. On the other hand, the new amount advanced was nondischargeable since it was given in reliance on the misrepresentation. *Id.*

Some courts subsequently misinterpreted *Danns* and the comments on the floor of Congress to mean that only the amount of new money advanced upon a renewal or extension of credit will be nondischargeable. The floor statements demonstrate that no such requirement exists.

> In many cases, a creditor is required by state law to refinance existing credit on which there has been no default. If the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an extension, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advanced; on the other hand, if an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false financial statement with regard to an existing loan, the entire debt is nondischargeable under section 523(a)(2)(B).[2]

124 Cong.Rec. 24, 32399 (1978) (statement of Rep. Edwards), 124 Cong.Rec. 25, 33998 (1978) (statement of Sen. DeConcini). Clearly, no absolute requirement of "new money" was contemplated.

Finally, this Panel finds further support in the Ninth Circuit's recent ruling in *Siriani, supra.* The Ninth Circuit stated that in pursuing a claim under § 523(a)(2) a creditor must show: (1) a representation of fact by the debtor; (2) that was material; (3) that the debtor knew at the time to be false; (4) that the debtor made with the intention of deceiving the creditor; (5) upon which the creditor relied; (6) that the creditor's reliance was reasonable[3]; and (7) that damage proximately resulted from the misrepresentation. *Id.* at 304.

Our review of the *Siriani* opinion reveals that the Ninth Circuit focused on this last factor. The debtors received a loan and obtained a financial guaranty bond pursuant to the requirements of the loan. The debtors received an extension on the loan conditioned on an extension of the bond. Before deciding to renew the bond, the bonding company requested financial statements from the debtors. The bankruptcy court found that the bonding company relied on the statements, which were materially false, in deciding to renew the bond. The debtors defaulted on the loan and the bonding company was forced to pay on the guaranty. It then filed a nondischargeability complaint pursuant to § 523(a)(2)(B) against the debtors in their subsequent bankruptcy case.

The bankruptcy court ruled in favor of the debtors on the basis that the bonding company had failed to show that its losses were proximately caused by the renewal of the

---

**2.** The wording at issue is found in § 523(a)(2) itself and not just in § 523(a)(2)(B). Therefore, the floor statements are equally applicable to cases under § 523(a)(2)(A). *See generally In re Siriani,* 967 F.2d 302, 304 (9th Cir.1992) (the same general standards are applicable to both sections).

**3.** Subsequent to *Siriani,* the Ninth Circuit has ruled that a creditor must prove *justifiable reliance* under § 523(a)(2)(A), not reasonable reliance. *In re Kirsh,* 973 F.2d 1454, 1460 (9th Cir.1992).

bond. The bankruptcy court found that the bonding company failed to present evidence that, had it not renewed the bond, it would have pursued its collection remedies in such a timely fashion as to have been able to collect. Specifically, the bankruptcy court focused on the fact that the bonding company did not pursue its remedies for five weeks after the debtors defaulted and that the preference period under § 547 would have prevented recovery. The BAP reversed, reasoning that the renewal of the bond was the equivalent of a new loan because the term of the previous bond had already expired before the renewal. Therefore, the bonding company had no commitment to the debtors at the time it renewed the bond. Based on this, the BAP held that the bonding company only needed to show that it sustained losses because it renewed the bond.

The Ninth Circuit agreed with the bankruptcy court's finding that the bonding company had agreed to the renewal while it was still obligated under the original bond. Consequently, although it affirmed the BAP, the court actually agreed instead with the reasoning of the bankruptcy court but for one point. The Ninth Circuit ruled that to show proximate damages a creditor must show that it had valuable collection remedies at the time it agreed to renew its commitment to the debtor and that those remedies lost value during the renewal period. The Ninth Circuit disagreed with the bankruptcy court's imposed requirement that the creditor also show that it would have exercised those rights in a sufficiently timely fashion so as to be able to collect. Essentially the court took the view that proximate damages could be calculated by comparing what would have been the value of the creditor's collection remedies on the date of the extension to the value of such remedies at the end of the extension or renewal period.

 The general discussion in *Siriani*, as well as the analysis in cases cited with approval therein, indicate that there is no "new money" requirement in § 523(a)(2). Rather, the creditor must just show, on top of the first six factors set forth above, that it incurred damage proximately resulting from the misrepresentation. Specifically, if the creditor demonstrates that it had valuable collection remedies at the time of the extension or renewal, that it did not exercise in reliance on the debtor's misrepresentation and that those remedies lost value during the renewal or extension period, the creditor has shown proximate damage to the extent that those remedies lost value.

## V

## CONCLUSION

The bankruptcy court granted summary judgment because the Bank did not advance additional funds when it extended the time to pay the Note. There is no new money requirement for bringing an action pursuant to § 523(a)(2). Therefore, we **REVERSE** and **REMAND.**